per curiam:
Plaintiff in this case, Phillip Rowe, appearing pro se, claims a refund for taxes paid to and withheld by the Internal Revenue Service on the ground that the taxing statute under which they were levied, the Foreign Earned Income Act of 1978[1] (FEIA), is unconstitutional. After careful consideration of the parties’ submissions, and without oral argument, we dismiss the petition for failure to state a claim upon which relief can be granted.[2]
Effective January 1, 1978, the FEIA replaced the prior tax treatment (I.R.C. § 911) of Americans working overseas, resulting in greater tax liability for some of such persons. *532 On his 1978 tax return, plaintiff calculated a tax due of zero, based on the then-repealed section 911, because he felt that the FEIA was unconstitutional. The IRS did not accept this treatment, recomputed the tax as an arithmetical adjustment, and assessed plaintiff for the tax, less amounts withheld, plus penalty for late payment and interest. Plaintiff made payment of the $3,489.67, for which, plus $800 withheld, he sues in this court.
1. The Preamble. Plaintiff asserts that the FEIA makes life more expensive for Americans working abroad, thus discouraging them from doing so. Putting Americans at a competitive disadvantage to non-Americans doing the same overseas job does not "establish justice”; the lack of Americans working overseas is detrimental to "the common defense”; it exacerbates the national balance of trade deficit which does not "promote the general welfare”; and the burden of the tax on plaintiff fails to "secure [to him] the blessings of liberty.”
It is emphatically the province of the legislative branch to say what most benefits the commonweal in such areas as the general welfare and the common defense. The courts may not pass on the wisdom of legislative enactments.[3] The preamble also provides no manageable standards for judging whether a law conforms to its provisions. The preamble does not create a cause of action.
2. Article I, Section 8. Plaintiff further contends that the income tax provided for by the sixteenth amendment is limited as to its purposes by the original grant to Congress of the taxing power in article I, section 8, clause 1 of the Constitution, which in turn limits the purpose of taxation to the payment of debts and provision for the common defense and general welfare. Because the FEIA has all of the deleterious effects enumerated above, plaintiff asserts, it exceeds this authority. How this clause can be read to limit the purposes of taxation, so long as they are within .the enumerated powers of Congress, is altogether mysterious. *533 Its terms broadly cover every aspect of governmental activity. Even if it were seen to limit the taxing power, however, it does so "only by the requirement that it shall be exercised to provide for the general welfare of the United States,”[4] which, as we stated above, provides no criteria— other than the forbidden one of wisdom of legislative policy — by which a court can judge the FEIA.
3. Article I, Section 9. Article 1, section 9, clause 5 states that "No Tax or Duty shall be laid on Articles exported from any State.” Plaintiff claims that he is such an article, exported from Arkansas apparently, and that congressional taxation of him is unconstitutional. Putting aside the obvious inapplicability of this provision to plaintiff, such a rule would immunize all Americans working in foreign places from taxation. This bizarre result was certainly not in the contemplation of the Framers.
4. The Ninth Amendment. Plaintiff asserts that the ninth amendment’s reservation of unenumerated rights to the people protects from encroachment by the FEIA his right to compete on equal terms with non-Americans for overseas jobs with overseas employers. Simply stated, no such right exists. Besides, the ninth amendment, like the preamble, has not been read as an independent source of specific substantive rights or duties.[5]
Plaintiffs submissions, although in several respects not in compliance with the rules of this court, presented a thorough, competently argued, and often well-documented exposition of what are in his opinion the defects of the FEIA. However, arguments about the wisdom of congressional policy are not within the judicial competence; they would more appropriately be addressed to the Congress.
Plaintiff has stated no claim upon which this court can grant relief,
accordingly, plaintiffs motion for summary judgment is denied; defendant’s cross-motion for summary judgment is granted; and the petition is dismissed.
*534 Plaintiffs motion for relief from judgment was denied January 29, 1982; plaintiffs petition for certiorari was denied May 17,1982.

 Pub. L. No. 95-615,92 Stat. 3097,95th Cong., 2d Sess. (1978).

 We cannot understand why the Government treated the case on the merits from the outset. A motion to dismiss for failure to state a claim upon which relief can be granted, under Rule 38, would have been appropriate, given the nature of plaintiffs claims, and would have saved both the parties and the court considerable time and effort.

. Mapes v. United States, 217 Ct. Cl. 115, 130, 576 F.2d 896, 904, cert. denied, 439 U.S. 1046 (1978) ("We in the judiciary, are neither equipped nor inclined to second guess the legislature in its determination of appropriate tax policies.”); McCray v. United States, 195 U.S. 27,59 (1904) ("if a tax be within the lawful power, the exertion of that power may not be judicially restrained because of the results to arise from its exercise”).

 United States v. Butler, 297 U.S. 1, 65-66 (1936). Butler actually struck down the Agricultural Adjustment Act on this and other grounds, but its attempt to give definite meaning to this clause resulted in no more conclusive a formulation than the words just quoted. Cf West Coast Hotel Co. v. Parrish, 300 U.S. 379 (1937) (courts should give great deference to legislative action in economic policy).

 See United Public Workers v. Mitchell, 330 U.S. 75, 95-96 (1947).